IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

OCT - 5 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| JUDGE J. JEREMIAH MAHONEY, an Administrative Law Judge at the United States Department of Housing and Urban Development who resides at 922 Willow Point, Newport News, Virginia 23602.<br><br>                                   *Plaintiff*<br><br>v.<br><br>SHAUN DONOVAN, SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, 451 7th Street SW, Washington DC 20410;<br><br>DAVID T. ANDERSON, Director, Office of Hearings and Appeals at the United States Department of Housing and Urban Development (in his professional capacity), 451 7th Street SW, Washington DC 20410<br><br>JOHN BERRY, DIRECTOR OF THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, 1900 E Street NW, Washington, D.C. 20415<br><br>                                   *Defendants.* | **COMPLAINT**<br><br>Case: 1:10-cv-01703<br>Assigned To : Kennedy, Henry H.<br>Assign. Date : 10/5/2010<br>Description. Employ. Discrim. |

## COMPLAINT

Plaintiff Administrative Law Judge J. Jeremiah Mahoney, complaining against Defendant

United States Department of Housing and Urban Development ("HUD"), Defendant David

Anderson, and Defendant United States Office of Personnel Management ("OPM") (collectively

"Defendants"), alleges as follows:

1

## SUMMARY OF ACTION

1.      Judge Mahoney brings this Complaint of employment discrimination against
Defendant HUD based primarily upon Defendant HUD's and Defendant Anderson's
retaliation/reprisal for Judge Mahoney's support and accurate statements regarding allegations
made by Administrative Law Judge Alexander Fernández regarding actions taken by HUD and
HUD officials that violate Judge Fernández' civil rights.

2.      Judge Fernández has filed his own civil complaint in this Court, numbered 1:10-
cv-00185 (Leon).

3.      As part of such retaliatory animus, Defendants HUD and Anderson have retaliated
against, harassed and interfered with, and continue to interfere with, Judge Mahoney's
independence as an Administrative Law Judge.

4.      Moreover, Defendants have refused to perform their duty to enforce Judge
Mahoney's judicial independence.

5.      The acts complained of violate, *inter alia*, the Federal Rehabilitation Act, 29
U.S.C. §§ 791 and 794a; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the
Federal Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; the Federal Administrative Procedure Act, 5
U.S.C. § 551 *et seq.*; 5 C.F.R. § 930.201; 24 C.F.R. §§26 and 180; and the Civil Service Reform
Act, 5 U.S.C. § 7702.

6.      Judge Mahoney seeks: (1) compensatory; (2) declaratory; and (3) injunctive relief
based upon past and continuing illegal and retaliatory conduct that he has been subjected to by
Defendant HUD and Defendant Anderson; and (4) mandamus requiring OPM to perform its
statutory duty to uphold the judicial independence of ALJs employed by HUD.

## PARTIES

7.      Judge Mahoney is a male citizen of the United States who resides in Newport News, Virginia.  At all times relevant to this action through the present, Plaintiff was employed as an Administrative Law Judge ("ALJ") by HUD.

8.      The United States Department of Housing and Urban Development ("HUD") is an Executive agency of the United States Government with an official address of 451 7th Street S.W., Washington, DC 20410.

9.      Steve Preston was the Secretary of HUD from the time Judge Mahoney began working for HUD in September 2008 through January 2009.  Defendant Shaun Donovan has been the Secretary of HUD from January 2009 through the present.

10.     At all times relevant to this action, Defendant David Anderson has been the Director, Office of Hearings and Appeals ("OHA") at HUD and the first level supervisor of Plaintiff Judge Mahoney, who serves in the Office of Administrative Law Judges ("OALJ") one of the components of OHA.

11.     Defendant Anderson is not an Administrative Law Judge, and has never been an Administrative Law Judge.

12.     On information and belief, at all times relevant to this action, Defendant Anderson has been in the Senior Executive Service, and he currently directly supervises all 10 of the other OHA employees.

13.     Since the Summer of 2009, and at all times relevant to this action, John Berry has been Director of the United States Office of Personnel Management ("OPM"),  an Executive agency of the United States Government with an official address of 1900 E. Street N.W., Washington, DC  20415.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1343; 29 U.S.C. §§ 791 and 794a; 42 U.S.C. § 2000e *et seq.*; and 5 U.S.C. § 7702.

15.     Jurisdiction is proper because Judge Mahoney has exhausted all available

administrative remedies.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the

actions Judge Mahoney complains of took place in the District of Columbia, within the

jurisdiction of the United States District Court for the District of Columbia.

## ADMINISTRATIVE PREREQUISITES

17.     Judge Mahoney has complied with all of the administrative prerequisites

necessary to bring this action.

18.     On January 12, 2010, Judge Mahoney made a timely request for EEO Counseling

and filed an informal complaint of discrimination with Defendant HUD's EEO Office.

19.     On March 11, 2010, Judge Mahoney filed a timely formal charge of

discrimination with Defendant HUD's EEO Office.

20.     Judge Mahoney was prepared to respond promptly and diligently to all EEO

requests for information and to fully cooperate in the investigation of his complaint by the

United States Postal Service ("USPS").

21.     There were no such requests.

22.     There was no such investigation.

23.     By letter dated June 15, 2010, the USPS National EEO Investigative Services

Office Notified Judge Mahoney that his complaint was dismissed, without investigation, for

failure to state a claim in accord with 29 C.F.R. § 1614.107(a)(1).

24.     Judge Mahoney received the Notice of Dismissal of his EEO Complaint on July 7, 2010, and is therefore entitled to file this complaint before this district court.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.106.

## FACTS

25.     During his tenure with the Federal Government, Judge Mahoney served as an Air Force officer for more than 30 years.

26.     Judge Mahoney retired as the longest serving military judge in U.S. history, with over 24 years on the bench.

27.     During that time, Judge Mahoney served as Chief Judge in three different Judicial Circuits:  Europe, East Coast and Central United States.

28.     Thereafter he served as a trial attorney in the Criminal Division of the Department of Justice, and as the director of an internal employee appeals board for the Department of Homeland Security.

29.     Judge Fernández and Judge Mahoney began their employment as ALJs for HUD on September 21, 2008, and both first reported for duty on September 22, 2008.

30.     On or about their first week of work, Judge Fernández requested reasonable accommodation of his medical conditions to commute to and from his office at HUD.

31.     When Judge Fernández was unable to arrange transportation on two occasions, Defendant Anderson denied his requests to telework on those days.

32.     On November 4, 2008, Judge Fernández filed a timely request for EEO Counseling and an informal complaint of discrimination with the HUD EEO Office.

33.     Defendant Anderson has retaliated and discriminated against Judge Fernández because Judge Fernández asserted his civil rights.

34.     Judge Fernández' allegations are detailed in 1:10cv-00185 (Leon), filed in this Court.

35.     Judge Mahoney was a witness to some of Defendant Anderson's discriminatory and retaliatory acts towards Judge Fernández.

36.     Judge Mahoney advised HUD Supervisors of Defendant Anderson's discriminatory and retaliatory actions towards Judge Fernández.

37.     Judge Mahoney provided statements at the request of EEO investigators and personnel regarding Defendant Anderson's discriminatory and retaliatory actions towards Judge Fernández.

38.     In fact, Mr. Anderson chastised Judge Mahoney for taking a public position supporting Judge Fernández:  "Your statement in your email below that '[I (Mr. Anderson)] am biased against Judge Fernández' is improper, and clearly demonstrates that you have taken a public position with respect to his EEO Complaint against the Department."

Retaliatory and Harassing Conduct

39.     On or about April of 2009, for unexplained reasons, Defendant Anderson decreed that Judge Fernández must have no personal contact with the Docket Clerk. Ms. Becky Black.

40.     Defendant Anderson moved Ms. Black into a private attorney's office in OHA, and later moved her to an office in a building four blocks from OHA, all the while retaining her title and job responsibilities.

41.     Judge Mahoney pointed out the impracticality of this arrangement considering the hands-on nature of Docket Clerk duties.

42.     Judge Mahoney suggested that, at minimum other staff employees be trained in the functions of the Docket Clerk, and that one of them be designated "Acting Docket Clerk" for the periods of Ms. Black's absence from OHA.

43.     Defendant Anderson stated he would not appoint an Acting Docket Clerk.

44.     On or around October 16, 2009, Judge Mahoney sent an e-mail to Ms. Black, copying Defendant Anderson, requesting that she provide a written list of tasks she performed as Docket Clerk, and the steps required to complete those tasks, to be used as a continuity book for Staff Assistants.

45.     In what was supposed to be a "secret" email, Defendant Anderson responded by ridiculing the request.

46.     Unbelievably, On December 31, 2009, over two months after he sent the "secret" email ridiculing Judge Mahoney, Defendant Anderson inexplicably launched a very caustic retaliatory email threatening to charge Judge Mahoney with insubordination.

47.     The email stated in part:  "Violation of this directive regarding the issue of an "Acting Docket Clerk" in this office and future challenges to my decision not to appoint an Acting Docket Clerk may be viewed as insubordinate conduct, as improper interference with my management responsibilities as OHA Director, and/or as interference with the exercise of my discretion as supervisor, and may result in the consideration of appropriate disciplinary action against you."

48.     On or about December 2009, Defendant Anderson announced that two law clerks would be detailed to OHA on a shared basis with the HUD Office of Public and Indian Housing (PIH).

49.     On December 18, 2009, Judge Mahoney asked Defendant Anderson whether the PIH duties of the law clerks would necessarily create a conflict if they were assigned work on a case from that program office, or if he should ask the HUD Office of Ethics for guidance.

50.     Defendant Anderson's response directed Judge Mahoney not to submit his question to the ethics office, and admonished him that such action would be "ill-advised."

51.     Thus Mr. Anderson prevented Judge Mahoney from communicating with HUD's ethics attorneys in an area squarely within their jurisdiction about a matter directly affecting his judicial duties.

52.     As further aggravation, Mr. Anderson used his email response to publicly chastise Judge Mahoney in violation of confidentiality rules, by adding the OA administrative judges as addressees.

53.     In the Spring of 2009 Judge Mahoney asked Defendant Anderson if he could apply for a telework agreement.

54.     Defendant Anderson said Judge Mahoney could apply but a telework agreement would not be approved.

55.     On information and belief, other OHA employees have since been granted approved telework agreements.

56.     In 2009 there was no office-wide discussion of an OHA holiday party but, on information and belief an office holiday party was hosted during core duty hours (from about 12:00 pm to 3:00 pm) on December 15, 2009, by Defendant Anderson at a private club where both he and Administrative Judge Manuel are members.

57.     Despite occurring in the middle of a work day, only selected employees (and at least one outside guest) were invited, and the participants were explicitly told not to inform the

uninvited OHA employees about the party. Judge Mahoney was neither invited to, nor informed of, the party.

58.     On information and belief, the employees who attended this holiday party did not use their personal leave time to do so.

59.     Defendant Anderson and HUD's decision to hold a private office party, during prime working hours, and to intentionally exclude targeted workplace employees, was retaliatory and further exacerbated the hostile work environment.

60.     Moreover, the uninvited employees, including Judge Mahoney, suffered actual discriminatory damage because—unlike the invited attendees— they were not afforded two or more hours of paid time to attend a social event, off duty.

Retaliatory and Harassing Conduct – Interference with Judicial Independence

61.     Throughout Judge Mahoney's employment at HUD, Mr. Anderson has failed to consistently assign cases to him in a rotating manner.  He has selectively assigned cases to judges based upon political considerations and/or the Secretary's perceived interests.

62.     On or around May 12, 2009, Defendant Anderson received a letter from a respondent in a case being adjudicated by Judge Mahoney.  Rather than immediately referring the letter in question to Judge Mahoney, as the case was on Judge Mahoney's docket, Defendant Anderson engaged in *ex parte* communication with the respondent.

63.     Respondent's case was listed as a pending case on Judge Mahoney's docket and appeared on the listing of the "ALJs OPEN DOCKET OF CASES" weekly report.   Undeterred, Defendant Anderson exceeded his authority by sending a letter to the respondent that incorrectly stated that the subject matter of her complaint "is not a matter over which the judges in this office have jurisdiction."  Importantly, Defendant Anderson did not consult with Judge Mahoney

prior to (or after) sending the letter.  Moreover, he did not advise counsel for HUD of his contact with Respondent.

64.     It was only weeks after Defendant Anderson had engaged in the *ex parte* conduct that Judge Mahoney discovered what had occurred, when he found Defendant Anderson's letter to the respondent on the shared drive while searching for another document.

65.     Months later, on or around November or December 2009, Defendant Anderson engaged in further *ex parte* communication on the same case.  This time, he instructed the Docket Clerk to call counsel for HUD and instruct counsel that "Judge" Anderson wanted a Settlement Update filed in writing, rather than by telephone (as required by a previous order issued by Judge Fernández, who was then serving as Settlement Judge on the case).  In addition to usurping Judge Fernández' authority as settlement judge, Defendant Anderson failed to notify Respondent of his *ex parte* contact with HUD counsel.

66.     On September 1, 2009, Judge Fernández had one of the law clerks send an e-mail to DOJ informing the DOJ attorney that, in the future DOJ would only receive information relating to NOTICES OF ELECTION (for Fair Housing cases to be tried in district court) after their issuance by an ALJ, and that DOJ should address any inquiries regarding Fair Housing matters to a law clerk, rather than to the docket clerk.

67.     Judge Fernández, in concert with Judge Mahoney, took this precaution because of irregularities that both he and Judge Mahoney had uncovered in the manner such information was being provided to DOJ by the Docket Clerk.

68.     Upon seeing this e-mail, Defendant Anderson sent a five-paragraph e-mail response to DOJ that expressly overruled Judge Fernández ' order.

69.     When Judge Mahoney responded by sending an e-mail to DOJ stating that

Defendant Anderson's position was not the preference of HUD's ALJs (who want the DOJ to comply with Judge Fernández ' order), Defendant Anderson sent another e-mail to the DOJ stating that Defendant Anderson's order "supersede[s] the position which the two HUD ALJs prefer."

70.     Defendant Anderson then sent a subsequent e-mail to Judge Mahoney stating that Judge Mahoney "may be" guilty of subordination.

71.     In response to Judge Mahoney's further objections, Defendant Anderson promised to request an opinion from HUD's Office of General Counsel regarding the proper method of issuing these notices, but he never followed through on his promise, despite being reminded to do so by Judge Mahoney.

72.     Ms. Blatchford, the Chief of Staff to the Secretary, and second-level supervisor of the ALJs, was informed of this event and took no action, leaving Defendant Anderson's actions undisturbed.

73.     The net effect was that the OALJ was providing DOJ with advance notice of a case soon to be pending trial in U.S. District Court.  That practice persists to this day at Defendant Anderson's insistence despite objections by the ALJs that the practice creates the appearance that the OALJ favors the Government's interests in Fair Housing Cases litigated in federal district court.

74.     On or around September 25, 2009, ALJ Mahoney requested that Ms. Black provide docket numbers for the more than 100 Mortgagee Review Board ("MRB") cases that had recently been directed to the OALJ.  These docket numbers are critical for permitting judges to keep track of the numerous cases filed under a wide variety of statutory schemes.

75.     Rather than allow the ALJs to control these matters on their docket, Defendant

Anderson instead sent an e-mail to various employees throughout HUD's OHA that, without any justification, summarily overruled Judge Mahoney's request.

76.     Defendant Anderson "noted" the ALJ's objections to his decision, but stated that the ALJs should "respect the instructions contained in that directive."

77.     Judge Mahoney's appeals to senior HUD officials to stop Defendant Anderson's interference with the judicial independence of the ALJs were treated dismissively, or ignored.

78.     Ms. Blatchford, was specifically informed about several of these violations of the ALJs' independence—including the Mortgagee Review Board actions and the early release of Notices of Election to DOJ in Fair Housing cases.

79.     No action was taken by Ms. Blatchford, or anyone else at HUD, to stop Defendant Anderson's interference with Judge Mahoney's judicial independence, or to abate the hostile work environment thereby created.

80.     Ms. Blatchford held only one meeting with Judge Mahoney, in April, 2009, which was shortened because she had other commitments.  However, she assured Judge Mahoney that there would be a follow-on meeting to discuss remaining issues, but it never happened, despite her assurance in person on May 22, 2009 that she would meet with Judge Mahoney the following week.

81.     Defendant Anderson directed Judge Mahoney to stop communicating with Ms. Blatchford, even though she was purportedly his second level supervisor.

82.     On those occasions where Judge Mahoney did email Ms. Blatchford, she seldom responded.

83.     During all of July 2009, and through parts of June 2009 and August 2009, HUD denied legal research resources to the HUD ALJs.

84.     Based on information and belief, at the same time, HUD fully funded the electronic legal research capability and resources for HUD's Office of General Counsel, which prosecutes cases in front of HUD's ALJs.

85.     During this period of time, OHA, which includes OALJ, had no updated and/or current legal research books.

Judge Mahoney's Pleas to OPM were Rejected.

86.     On July 1, 2009, after exhausting internal avenues of appeal, Judge Mahoney wrote a letter to Director Berry of OPM.

87.     Judge Mahoney asked Director Berry to exert OPM's enforcement authority to investigate and correct pervasive interference with judicial independence sanctioned by HUD senior leadership.

88.     On November 9, 2009, an OPM official, Mr. Jeffrey Sumberg, responded suggesting a phone conversation.

89.     HUD ALJs requested a face-to-face meeting, which (once delayed) was held on January 13, 2010, at OPM.

90.     Mr. Sumberg expressed surprise and concern at the matters related by Judges Mahoney and Fernández and indicated he did not know what could be done, but he would discuss with OPM leadership.

91.     Judges Mahoney and Fernández indicated they would be available to discuss the matter and provide further information.

92.     Mr. Sumberg said he would get back to them soon.

93.     In the meantime, on February 2, 2010, Judge Fernández filed his mixed case complaint in the Federal District Court for the District of Columbia (1:10-cv-00185(Leon)).

94.     On April 28, 2010, Mr. Sumberg indicated that, based upon advice of the OPM

General Counsel, OPM would do nothing because of Judge Fernández' pending litigation in

Federal district court.

95.     On April 30, 2010, Judge Mahoney replied to Mr. Sumberg, asking OPM to

reconsider and do the right thing, but OPM has not responded.

The Federal Administrative Law Judge Conference ("FALJC") Urging of HUD and OPM went
Unanswered.

96.     On April 22, 2010, Judge Peter Davenport, as President of the FALJC wrote a

letter of concern on behalf of FALJC to the HUD Secretary, with a Copy to the Director of OPM,

asking that the Secretary investigate the allegations of the HUD ALJs, and take appropriate

action, as warranted.

97.     Neither the HUD Secretary, nor the Director of OPM has responded to the

FALJC.

98.     Despite his Request for EEO Counseling and investigation of his EEO Complaint,

Judge Mahoney was not counseled.

99.     Judge Mahoney's complaint was not investigated.

100.    In fact, it was dismissed for lack of the very evidence that an investigation would

have provided.

101.    Moreover, the dismissing official apparently made findings of fact without

conducting an investigation, and used such facts to justify dismissal of the complaint.

### CLAIMS FOR RELIEF

First Count: Retaliation/Reprisal in Violation of the Federal Rehabilitation Act. 29 U.S.C. §
791: the Americans with Disabilities Act. 42 U.S.C. § 12101 *et seq*.; and the Federal Civil Rights
Act, 42 U.S.C. § 2000e-3

102.    The allegations contained in paragraphs 25 through 85 and 96 through 101 are

incorporated herein by reference.

103.    Defendants Anderson and HUD have repeatedly subjected Judge Mahoney to acts of retaliation/reprisal in violation of the Federal Rehabilitation Act, 29 U.S.C. § 791; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* and the Federal Civil Rights Act, 42 U.S.C. § 2000e-3, because he filed an EEO complaint and because of his support of Judge Fernández' allegations.  These actions caused Judge Mahoney to suffer increased stress, and anxiety, and to suffer embarrassment, damage to his professional and personal reputation, a decrease in his stature within the office, and the deterioration of his relationship with certain members of the OHA staff.

Second Count: Harassment in Violation of the Federal Rehabilitation Act, 29 U.S.C. § 791: the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* and the Federal Civil Rights Act. 42 U.S.C. 6 2000e-3.

104.    The allegations contained in paragraphs 25 through 85 and 96 through 101 are incorporated herein by reference.

105.    In addition, the harassment suffered at the hands of Defendants Anderson and HUD and experienced by Judge Mahoney because of his participation in the EEO process caused him to suffer increased stress, anxiety and embarrassment, damage to his professional and personal reputation, a decrease in his stature within the office, and the deterioration of his relationship with certain members of the OHA staff.

Third Count: Violation of the Federal Administrative Procedure Act, 5 U.S.C. § 3105.

106.    The allegations contained in paragraph 61 are incorporated herein by reference.

107.    Defendants  Anderson and HUD  have repeatedly violated the Federal Administrative Procedure Act by not assigning cases in rotation to HUD's Administrative Law

15

Judges following the statutory requirement that "Administrative Law Judges shall be assigned to cases in rotation so far as practicable." 5 U.S.C. § 3105; *see also* 5 C.F.R. § 930.201(f)

108.    This caused Judge Mahoney to suffer embarrassment, anxiety, damage to his professional and personal reputation.

Fourth Count: Interference with Judicial Independence in Violation of the Federal Administrative Procedure Act 5 U.S.C. § 551 *et seq.*

109.    The allegations contained in paragraphs 25 through 101 are incorporated herein by reference.

110.    Defendants Anderson, HUD, and other supervisory officials repeatedly sought to interfere and curtail the judicial independence that Judge Mahoney is entitled to as an Administrative Law Judge.  These actions violate the Federal Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, 5 C.F.R. § 930.201 (e) and (f), and 24 C.F.R. §§ 26 and 180.

Fifth Count: Interference with Judicial Independence/Failure to Protect Judicial Independence in Violation of the Federal Administrative Procedure Act 5 U.S.C. § 551 et seq.

111.    The allegations contained in paragraphs 86 through 97 are incorporated herein by reference.

112.    Defendant OPM, in failing to carry out its duty to ensure ALJ independence and turning a blind-eye to Judge Mahoney's pleas, has violated the Federal Administrative Procedure Act, 5 U.S.C. § 551 et seq., 5 C.F.R. § 930.201 (e) and (f), and 24 C.F.R. §§ 26 and 180.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Judge Mahoney respectfully requests that this Honorable Court grant the following relief:

(1)    A declaration that HUD and Defendant Anderson have repeatedly acted in a discriminatory, retaliatory, harassing, and hostile manner against Judge Mahoney;

(2)     A declaration that HUD and Defendant Anderson have repeatedly interfered with Judge Mahoney's independence as an Administrative Law Judge;

(3)     An injunctive order requiring HUD to take specific corrective action for retaliation of Judge Mahoney in the past, and that it take appropriate steps to protect Judge Mahoney from the effects of past retaliation, and from future retaliation, including an order that Defendant Anderson and Ms. Blatchford no longer be in the supervisory chain of any ALJ;

(4)     An injunctive order requiring OPM to take specific corrective action to enforce its statutory duty to ensure that agencies that OPM permits to employ ALJs respect the judicial independence of those ALJs, to include—but not limited to—designating a senior OPM official as responsible for investigating complaints of interference with ALJ judicial independence, and providing that official authority to take appropriate action, up to and including authority to withdraw an agency's permission to employ ALJs;

(5)     Awarding Judge Mahoney compensatory damages of USD 300,000.00 payable to a charity of his choosing;

(6)     Awarding Judge Mahoney reasonable attorney's fee and the costs and expenses of bringing this action against HUD;

(7)     Such other relief that is just and proper, including any pre-judgment and post-judgment interest due;

17

(8)     All other relief to which Judge Mahoney shows himself entitled to at law or in equity.

Dated:  October 5, 2010

Respectfully Submitted,

J. Jeremiah Mahoney, *Pro Se*
922 Willow Point
Newport News, VA 23602
(703) 599-4338
judgejj@aol.com