## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                  )
J. JEREMIAH MAHONEY,         )
Administrative Law Judge      )
                                    )
                Plaintiff    )
                                    )
          v.                   )
                                    )
SHAUN DONOVAN, Secretary   )
U.S. Department of Housing    )
and Urban Development,       )
451 7th St. SW, Washington, DC 20410 )
(in his official capacity);     )             Case No. 1:10-cv-01703 (HHK)
                                    )
DAVID T. ANDERSON,       )
Director, Office of Hearings and Appeals,  )
U.S. Department of Housing    )
and Urban Development,       )
451 7th St. SW, Washington, DC 20410 )
(in his official capacity);     )
                                    )
JOHN BERRY, Director       )
Office of Personnel Management,   )
1900 E St. NW, Washington, DC 20415 )
(in his official capacity)      )
                                    )
               Defendants  )
_____ )

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendant Shaun Donovan, Secretary of the United States Department of Housing and Urban

Development ("HUD"), Defendant John Berry, Director of the Office of Personnel Management,

and Mr. David T. Anderson, HUD employee, by and through undersigned counsel, respectfully

move the Court to dismiss all counts against Mr. Anderson, as an improperly named defendant,

and to dismiss all counts against the properly named defendants.  The grounds for the requested

relief are set forth in the attached memorandum.  A proposed order is also attached.

                              Respectfully submitted,

                              RONALD C. MACHEN JR., D.C. BAR # 447889
                              United States Attorney

                              RUDOLPH CONTRERAS, D.C. Bar # 434122
                              Chief, Civil Division


                              By:  _/s/_____
                              ROBIN M. MERIWEATHER
                              Assistant United States Attorney
                              555 Fourth St. NW
                              Washington, DC 20530
                              Phone:  (202) 514-7198
                              Fax:  (202) 514-8780
                              Robin.Meriweather2@usdoj.gov

Of Counsel:
Jonathan English
Attorney-Advisor
U.S. Department of Housing and Urban Development
Office of General Counsel, Personnel Law Division
451 7th Street, SW
Washington, DC 20410
Phone:  (202) 402-3213
Fax:  (202) 401-7400

Julie L. Ferguson Queen
Office of General Counsel
U.S. Office of Personnel Management
1900 E Street, N.W.
Washington, DC 20415

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                              )
J. JEREMIAH MAHONEY,                          )
Administrative Law Judge                      )
                                              )
                      Plaintiff               )
                                              )
         v.                                   )
                                              )
SHAUN DONOVAN, Secretary                      )
U.S. Department of Housing                    )
and Urban Development,                         )
451 7th St. SW, Washington, DC 20410          )
(in his official capacity);                   )
                                              )        Case No. 1:10-cv-01703 (HHK)
DAVID T. ANDERSON,                            )
Director, Office of Hearings and Appeals,     )
U.S. Department of Housing                    )
and Urban Development,                         )
451 7th St. SW, Washington, DC 20410          )
(in his official capacity);                   )
                                              )
JOHN BERRY, Director                          )
Office of Personnel Management,               )
1900 E St. NW, Washington, DC 20415           )
(in his official capacity)                    )
                                              )
                      Defendants              )
_____       )

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff is employed as an Administrative Law Judge ("ALJ") by the Defendant United

States Department of Housing and Urban Development ("HUD") in HUD's Office of Hearings

and Appeals ("OHA").  In Counts I and II of his Complaint, Plaintiff brings retaliation claims

under Title VII, the Americans With Disabilities Act, and the Rehabilitation Act based on

alleged retaliation and retaliatory harassment for his participation in EEO activity in connection

with, and/or his alleged support of, HUD ALJ Alexander Fernandez's separate EEO complaint.

In Counts III, IV, and V, Plaintiff attempts to raise claims under the Administrative Procedure Act, seeking judicial review of simple administrative processes in OHA, and of the Office of Personnel Management's ("OPM's") alleged failure to intervene in Plaintiff's dispute with OHA officials.  Defendants respectfully move the Court to dismiss the complaint for failure to state a claim, and/or lack of subject matter jurisdiction.

Defendants raise several independent grounds for dismissal.  First, Mr. Anderson (a supervisor), whom Plaintiff seeks to sue in his "professional capacity," is not a properly-named defendant in this action because this is a suit against Plaintiff's employer, HUD.   Second, Plaintiff cannot bring claims under the ADA, because the Rehabilitation Act is the sole statute under which federal employees may bring claims alleging retaliation for participating in EEO activity regarding disability discrimination claims.  Third, the retaliation claims do not state a viable claim for relief, because Plaintiff did not timely exhaust administrative remedies and/or because the incidents of which he complains are not materially adverse actions.  Fourth, Plaintiff's allegations do not describe conduct that is severe or offensive enough to constitute a hostile work environment.  Fifth, the Court lacks jurisdiction to review Plaintiff's APA claims against both HUD and OPM.  Finally, Plaintiff lacks standing to bring claims based on the alleged infringement of HUD ALJs' judicial independence.

## I.      STANDARD OF REVIEW

As the party asserting jurisdiction, it is Plaintiff's burden to prove that federal jurisdiction over his claim is proper.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936); Julien v. CCA of Tennessee, Inc., 268 F. Supp. 2d 19 (D.D.C. 2003).  When faced with a facial challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court applies substantially the same standard of review that is used to evaluate Fed. R. Civ. P. 12(b)(6)

motions.  Arbitraje Casa De Cambio v. United States Postal Serv., 297 F. Supp. 2d 165, 168

(D.C. Cir. 2003).

A Rule 12(b)(1) motion "tests the legal sufficiency of the complaint."  ACLU Foundation

of Southern Calif. v. Barr, 952 F.2d 457, 472 (D.C. Cir. 1991).  Federal court jurisdiction cannot

be presumed, but must be affirmatively and distinctly pled in the complaint.  Norton v. Larney,

266 U.S. 511, 515-16 (1925).  The "United States, as sovereign, is immune from suit save as it

consents to be sued, . . . and the terms of its consent to be sued in any court define that court's

jurisdiction to entertain the suit."  United States v. Sherwood, 312 U.S. 584, 586 (1941); see also

United States v. Mitchell, 445 U.S. 535, 538 (1980).  Waivers of sovereign immunity cannot be

implied, but must be unequivocally expressed.  Mitchell, 445 U.S. at 538 (quoting United States

v. King, 395 U.S. 1, 4 (1969)).  In addition, such statutory waivers "are to be construed strictly in

favor of the sovereign."  McMahon v. United States, 342 U.S. 25, 27 (1951) (footnote omitted).

"In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1), the Court must accept the complaint's well-pled factual

allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v.

Capitol Police Bd., 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted).  "The court is not

required, however, to accept inferences unsupported by the facts alleged or legal conclusions that

are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citing

Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)), aff'd, 346 F.3d 192 (D.C. Cir.

2002), cert. denied, 543 U.S. 809 (2004).  This is particularly important here because Plaintiff

is seeking to circumvent the exclusive remedial scheme provided by the Civil Service Reform

Act.

3

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (clarifying the standard from Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Aktieselskabet v. Fame Jeans, Inc., 525 F.3d 8, 16-17 (D.C. Cir. 2008); In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly). While Plaintiff's factual allegations are entitled to the assumption of truth at the pleading stage, Plaintiff's conclusory allegations are not. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009). Hence, the focus is on the specific factual allegations asserted in the complaint—as opposed to legal conclusions or conclusory factual statements—and whether each claim sets forth sufficient factual allegations to support Plaintiff's claims for relief. "[L]itigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." Runkle, 391 F. Supp. 2d at 221 (quoting Rochon v. Ashcroft, 319 F. Supp. 2d 23, 29 (D.D.C. 2004), rev'd on other grounds, Rochon v. Gonzales, 438 F. 3d 1211 (D.C. Cir. 2006)).

## II.    BACKGROUND

For purposes of this motion, the relevant facts, which the Court must accept as true, are as follows:  Plaintiff is an ALJ in HUD's OHA. Compl. ¶¶ 7, 10. David Anderson is Plaintiff's supervisor and Director of OHA. Compl. ¶ 10. Judge Fernandez, another ALJ in OHA, filed an informal complaint of discrimination with HUD's EEO Office on November 4, 2008, related to his request for reasonable accommodation of certain medical conditions. Compl. ¶¶ 30-32. Later, Judge Fernandez filed a complaint in district court alleging discrimination. Compl. ¶ 34. Plaintiff asserts that, at the request of EEO investigators, he provided statements regarding the

claims in Judge Fernandez's complaint.  Compl. ¶ 37.  Also, Plaintiff states that he spoke with

HUD supervisors about Mr. Anderson's allegedly discriminatory actions.  Compl. ¶ 36.

Subsequently, Plaintiff claims he was retaliated against by Mr. Anderson and HUD, as

reprisal for Plaintiff's support of Judge Fernandez's complaint.   Specifically, Plaintiff alleges he

was retaliated against when allegedly:  on December 31, 2009, Mr. Anderson directed Plaintiff to

stop urging the appointment of an Acting Docket Clerk in place of OHA's Docket Clerk, Ms.

Black, Compl. ¶¶ 39-47; in December 2009, Mr. Anderson directed Plaintiff not to obtain advice

from HUD's ethics office regarding whether a potential conflict of interest existed for two law

clerks undertaking work in OHA and HUD's Office of Public and Indian Housing, Compl. ¶¶

48-51; in the spring of 2009, Mr. Anderson informed Plaintiff, in response to Plaintiff's question,

that Plaintiff could apply for telework but a telework agreement would not then be approved,

Compl. ¶¶ 53-54; in December 2009, Plaintiff was not invited to an OHA holiday party hosted

on December 15, 2009, by Mr. Anderson at a private club, Compl. ¶¶ 56-57; "[t]hroughout

[Plaintiff's] employment at HUD," case assignments were not always made on a rotating basis,

but sometimes were assigned by Mr. Anderson "based upon political considerations and/or the

Secretary's perceived interests," Compl. ¶ 61; in May 2009, Mr. Anderson responded to a letter

from a respondent in a case being adjudicated by Plaintiff, Compl. ¶¶ 62-64; in September 2009,

after Judge Fernandez initiated communication with the Department of Justice to change the

manner in which Notices of Election would be transmitted to DOJ by OHA, Mr. Anderson

communicated with DOJ to explain that the previous practice would remain in effect and this

information would continue to be provided by the Docket Clerk, Compl. ¶¶ 66-69; and at the end

of September 2009, Mr. Anderson instructed the Docket Clerk not to assign docket numbers to a

number of Mortgagee Review Board notices, as requested by Plaintiff, Compl. ¶¶ 74-76.

Plaintiff also alleges that some of these actions interfered with Plaintiff's judicial independence contrary to the Administrative Procedure Act.  See, e.g., Compl. ¶¶ 79, 87, 106-12. Further, Plaintiff has alleged that HUD and OPM failed to take action to protect Plaintiff's judicial independence contrary to the APA.  See, e.g., Compl. ¶¶ 79, 82, 86-96.

## III.    DAVID ANDERSON IS NOT A PROPER DEFENDANT AND THE CLAIMS AGAINST HIM SHOULD BE DISMISSED.

Defendant respectfully requests that the claims against Mr. Anderson, whom Plaintiff has sued in his "professional"—i.e., official—capacity, be dismissed.  The only proper defendant in this action is the head of the agency  in which the alleged discriminatory acts occurred.  See, e.g., Hackley v. Roudebush, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975); Nurriddin v. Bolden, 674 F. Supp. 2d 64, 81-82 (D.D.C. 2009) ("The only proper defendant in a civil action under Title VII is 'the head of the department, agency, or unit'. . . .  The same is true of a civil action under the Rehabilitation Act.") (quoting 42 U.S.C. § 2000e-16(c)) (citations omitted); Haynes v. HHS, 879 F. Supp. 127, 129 (D.D.C. 1995) ("The only proper defendant in a Title VII suit brought by a federal employee is the head of the agency alleged to have unlawfully discriminated.") (citations omitted).  As this Court has explained when dismissing a plaintiff's Title VII and ADA claims against several current and former employees,

> Because an official capacity suit against an individual is the functional equivalent of a suit against the employer, plaintiff's claims against the officers are redundant and an inefficient use of judicial resources.

Cooke-Seals v. District of Columbia, 973 F. Supp. 184, 187 (D.D.C. 1997) (citations omitted) (emphasis in original).

Plaintiff has filed this suit against the current Secretary of HUD, Shaun Donovan, in his official capacity, and the Director of the Office of Personnel Management, John Berry, in his official capacity, as well as one current HUD employee, Mr. Anderson.  The claims against Mr.

6

Berry, Director of OPM, appear to be limited to allegations under the Administrative Procedure Act (APA); Mr. Mahoney does not raise employment discrimination claims against Mr. Berry.[1] See Compl. ¶¶ 1, 3.  Each of the facts alleged by Plaintiff in his Complaint arise from acts or omissions in the (HUD) workplace, and each claim against Mr. Anderson arose within the course and scope of his federal employment.  The Rehabilitation Act and Title VII only permit complaints against the head of the relevant agency.  Mr. Anderson is not the head of HUD; therefore, all claims against Mr. Anderson should be dismissed.

## IV.     PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED.

### A.  Plaintiff Cannot Raise ADA Claims Because  He Is A Federal Employee Covered By The Rehabilitation Act.

Plaintiff identifies both the ADA and the Rehabilitation Act as the statutory basis for his retaliation claims.  The ADA claim should be dismissed (for failure to state a claim and/or lack of subject matter jurisdiction), because Plaintiff is a federal employee who, under the alleged circumstances, may only assert a charge of retaliation under the Rehabilitation Act or Title VII.[2] In Raines v. Dep't of Justice, the plaintiff, a federal employee, asserted a claim of disability discrimination against the federal government under the Tennessee Handicap Discrimination Act as well as under the ADA for wrongful termination.  424 F. Supp. 2d 60, 64 (D.D.C. 2006). However, the court dismissed both claims, noting that the Rehabilitation Act is the exclusive remedy for employment discrimination based on a disability for federal employees, and explaining that the ADA is not applicable to federal employees.  Id.; see also Spelke v. Gonzales,

---

[1]  Mr. Berry would not be a proper defendant for any such claim, because Mr. Mahoney is not an OPM employee.  See Compl. ¶¶ 7, 10.

[2]  Plaintiff does not allege that he was denied a reasonable accommodation or treated differently because of an actual or perceived disability.  Instead, he raises retaliation claims based on his support of a colleague's Rehabilitation Act and Title VII claims.

516 F. Supp. 2d 76, 81, n. 4 (D.D.C. 2007) (noting that only the Rehabilitation Act should have

been cited, and not the ADA); Ward v. Kennard, 133 F. Supp. 2d 54, 57 (D.D.C. 2000) (noting

similarly that Title VII is the only remedy for claims of discrimination based on race, sex, etc.)

(citing Brown v. General Servs. Admin., 425 U.S. 820, 835 (1976)), aff'd, Ward v. Powell, 2001

WL 1154507 (D.C. Cir. 2001).  Likewise,  Plaintiff is a federal employee, and cannot bring any

claims under the ADA.  Therefore, the ADA claim should be dismissed.

### B.   Plaintiff Did Not Timely Exhaust The Retaliation Claims Based On Incidents That Allegedly Occurred  Before November 28, 2009.

Federal employees may file a civil action under Title VII concerning employment

discrimination or retaliation only after exhausting their administrative remedies before the

relevant federal agency for each discrete alleged discriminatory act.  42 U.S.C. 2000e-16(c);

Morgan, 536 U.S. at 108-09; More v. Snow, 480 F. Supp. 2d 257, 270 (D.D.C. 2007).  The

exhaustion requirement is "not a mere technicality."  Park v. Howard Univ., 71 F.3d 904, 907

(D.C. Cir. 1995).  Instead, the "requirement is mandatory and serves to allow the agency an

opportunity to resolve the matter internally and avoid unnecessarily burdening the courts.  Bush

v. Engleman, 266 F. Supp. 2d 97, 101 (D.D.C. 2003) (citing Wilson v. Pena, 79 F.3d 154, 165

(D.C. Cir. 1996)).  Otherwise, courts will dismiss the claims for failure to exhaust administrative

remedies and as untimely raised.  See Stewart v. Ashcroft, 352 F.3d 422, 425 (D.C. Cir. 2003).

Under rulemaking authority delegated by Title VII, see 42 U.S.C. § 2000e-16(b), the

Equal Employment Opportunity Commission ("EEOC") has established "detailed procedures and

regulatory time limits that govern employees' pursuit of those administrative remedies for

alleged race, sex, or age discrimination.  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir.

1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  The EEOC's

regulations require that aggrieved employees consult an agency EEO Counselor within forty-five

(45) days of the matter alleged to be discriminatory or retaliatory or, in the case of personnel action, within forty-five (45) days of the effective date of the action.  29 C.F.R. 1614.105(a)(1); see also Park, 71 F.3d at 907; More, 480 F. Supp. 2d at 269-70.  If an employee fails to contact an EEO counselor within that time period, her claims will be time-barred.  Bowden, 106 F.3d at 437; Park, 71 F.3d at 907 (D.C. Cir. 1995); Hunter, 531 F. Supp. 2d at 190-91; More, 480 F. Supp. 2d at 270-71; Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000).

Plaintiff alleges that he contacted an EEO Counselor on January 12, 2010.  Compl. ¶ 18. However, most of the discrete acts of which Plaintiff complains occurred more than 45 days prior to January 12, 2010, and are therefore time-barred.  That includes the alleged denial of an informal request to telecommute in the spring of 2009 (Compl. ¶ 53); the alleged response to a respondent in a case being adjudicating by Plaintiff in May 2009 (Compl. ¶ 62); the alleged denial of research resources for OHA for a month or so in the summer of 2009 (Compl. ¶ 83); the exchange regarding transmittal of HUD cases to the Department of Justice on or around September 1, 2009 (Compl. ¶¶ 66, 68); and the decision regarding the docketing of Mortgagee Review Board matters prematurely, before receipt of a hearing request, "[o]n or around September 25, 2009" (Compl. ¶ 74).  These discrete events all occurred well before November 28, 2009, and well more than 45 days prior to Plaintiff's contact with an EEO Counselor on January 12, 2010.  Compl. ¶ 18.  Thus, these allegations are time-barred and should be dismissed for failure to exhaust administrative remedies and failure to state a claim.  See Stewart v. Ashcroft, 352 F. 3d at 425; Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 64 n. 6 (D.D.C. 2008) (noting that motion to dismiss for failure to exhaust administrative remedies is properly analyzed under FRCP 12(b)(6) for failure to state a claim), reconsideration denied, 598 F. Supp. 2d 57 (D.D.C. 2009).

The exhaustion requirement governing hostile work environment claims is less onerous than the requirement governing other claims of discrimination or retaliation.  Incidents that occurred outside the 45-day period  may be considered as part of a viable hostile work environment claim if at least one of the allegedly harassing acts occurred within the 45-day period.  See Morgan, 536 U.S. at 122.   In this case, because Plaintiff has not presented a viable hostile work environment claim, as discussed infra,  he cannot avail himself of that less burdensome exhaustion requirement.  Instead, Plaintiff's retaliation claims are limited to discrete incidents that occurred within 45 days of his EEO contact.  Therefore, Plaintiff's claims concerning alleged incidents that occurred more than 45 days before he contacted an EEO Counselor are untimely, and must be dismissed for failure to exhaust administrative remedies.  See, e.g., Morgan, 536 U.S. at 114-15;  Stewart, 352 F. 3d at 425.

### C. Even if They Had Been Timely Exhausted, Plaintiff's Allegations Do Not Describe Materially Adverse Actions.

#### 1. A Materially Adverse Action Is A Fundamental Requirement For A Retaliation Claim.

The presence of a materially adverse action is a necessary prerequisite for any claim of retaliation or discrimination.   To present a viable claim of retaliation, a plaintiff  "must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim," or engaged in other protected activity.[3]  Baloch v.

---

[3]  Claims asserting race, national origin, or sex discrimination  under Title VII are governed by a different adverse action standard, which requires that the challenged personnel action have "materially adverse consequences affecting the terms, conditions, or privileges" of the plaintiff's employment.   Brown  v. Brody, 199 F.3d 446, 455 (D.C. Cir. 1999);  see also Douglas v. Donovan, 559 F. 3d 549, 551-52 (D. C. Cir. 2009) (finding no adverse action where supervisor declined to nominate employee for Presidential Rank Award, which carried with it a significant bonus in pay).  Plaintiff does not raise that type of discrimination claim.  Although he raises two counts under Title VII, he contends that HUD acted with a *retaliatory* intent, as opposed to a discriminatory intent.  Plaintiff also does not claim to be a member of a protected class.

Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008). The threshold question is whether a materially adverse action has been taken; only after that question has been answered must the court go on to consider the merits of the retaliation claims. The Supreme Court has emphasized the importance of this threshold question of adverse employment action, explaining that employees are not protected from every workplace injury but only from employment actions which rise to the level of "*material* adversity" thus distinguishing "significant from trivial harms." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006). "Title VII . . . does not set forth 'a general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

For employment actions to be adverse, in the context of retaliation claims, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Mogenhan v. Napolitano, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (quoting Burlington Northern, 548 U.S. at 68); see also Baloch, 550 F. 3d at 1198; Test v. Holder, 614 F. Supp. 2d 73, 84 (D.D.C. 2009). The same adverse standard governs retaliation claims brought under the Rehabilitation Act. See Gard v. United States Dep't of Educ., __ F. Supp.2d __, 2010 WL 4780804, *7 (D.D.C. Nov. 23, 2010). When the facts alleged in the complaint do not plausibly support the conclusion that the plaintiff suffered a materially adverse action, courts dismiss the retaliation claims. See Runkle v. Gonzales, 391 F. Supp. 2d 210, 221 (D.D.C. 2005) (granting defendant's motion to dismiss disparate treatment and retaliation claims where adverse action was not sufficiently alleged, but denying motion to dismiss harassment claim); Brooks-Miller v. England, 357 F. Supp. 2d 197 (D.D.C. 2004) (dismissing retaliation claim for failure to assert adverse action where plaintiff's allegation of

lateral transfer did not assert any significant negative impact but merely included conclusory statements of diminished opportunity).

### 2.   Plaintiff's Retaliation Claims Are Based On Alleged Incidents That Are Not Materially Adverse Actions.

Plaintiff has failed to allege facts plausibly establishing that he suffered a materially adverse action.  Plaintiff's claims focus on administrative processes and procedures within OHA which typically govern all OHA staff.  While Plaintiff may have done a few things differently had he been OHA Director, none of the issues raised by Plaintiff come close to being a materially adverse action  that would deter a reasonable employee from  pursuing protected activity.

### a.   The Manner In Which Assignments Were Made

First, it is important to note that Plaintiff's allegations regarding the assignment of cases concern matters that predate his protected activity, and may not be challenged as part of a retaliation claim.   Plaintiff alleges that "[t]hroughout [his] employment at HUD, Mr. Anderson has failed to consistently assign cases to him in a rotating manner."  Compl. ¶ 61.  However, only actions taken after an employee has engaged in protected activity can  be retaliatory; actions occurring before the protected activity are irrelevant.  See Test v. Holder, 614 F. Supp. 2d 73, 76, 84 (D.D.C. 2009) (considering only those "actions taken by [the plaintiff's] supervisors after they knew of [his] EEO activity" in considering question of adverse employment action, excluding from consideration plaintiff's two-day suspension).  In this case, Plaintiff clearly alleges that "*[t]hroughout* [Plaintiff's] employment at HUD," Mr. Anderson did not consistently assign cases on a rotating basis.  Comp. ¶ 61 (emphasis added).  Plaintiff further states that he began his employment with HUD on September 21, 2008.  Compl. ¶ 29.  As Plaintiff admits, then, the asserted administrative practice with respect to case assignments was in place before

12

Plaintiff engaged in protected activity, and Plaintiff cannot bring a retaliation claim based on that practice.

Yet even if case assignment practices were relevant to the retaliation claims, those practices do not amount to materially adverse action.  Although case-specific facts may make a particular reassignment of duties adverse, a change in assignment "is not automatically actionable."  Burlington, 548 U.S. at 71.  Instead, the plaintiff  must provide evidence that tangible harm, *i.e.* adverse consequences, will flow from performing the new duties.  See Sewell v. Chao, 532 F. Supp. 2d 126, 136-37 (D.D.C. 2008) (concluding new assignments and transfer to another department were not adverse actions because plaintiff  "offered  no evidence of injury or harm resulting from her new assignments").  Here, Plaintiff's allegations merely address which cases are assigned to which ALJ; no decrease in salary or change in work hours is alleged.  Being subject to those assignment practices is not a materially adverse action.

### b.   *The Email Regarding  Appointment Of A Docket Clerk*

Plaintiff also has alleged that Mr. Anderson sent him an email on December 31, 2009, directing him to stop advocating the appointment of an Acting Docket Clerk in place of Ms. Black, cautioning Plaintiff that failure to follow the instruction could result in disciplinary action.  See Compl. ¶¶ 46-47.  However, the D.C. Circuit has found that proposed disciplinary action is not a materially adverse action.  See  Baloch, 550 F. 3d at 1198-99.  In Baloch, the plaintiff's supervisor had, on two separate occasions, proposed suspensions of the plaintiff, one for two days, the other for 30 days.  Id. at 1195, 1199.  Merely proposing to take that disciplinary action, however, was held not to constitute adverse action in the context of a retaliation claim.  Id.  The email Plaintiff complains of here was not even a proposal of discipline; it simply cautioned that such a proposal could come in the future if Plaintiff failed to follow instructions.  Similarly,

13

letters of counseling, and even letters of reprimand, communicating job-related constructive criticism, are not considered adverse action.  See id. at 1199.

It follows that Mr. Anderson's alleged email is not a materially adverse action.  The alleged email does not propose suspension, but merely warns Plaintiff that some disciplinary action might follow if Plaintiff continued to engage in the same conduct.  In that respect, it is more innocuous than the proposed suspensions that were at issue in Baloch.  Receiving such an email would not dissuade a reasonable employee from  making or supporting a charge of discrimination.  See Mogenhan, 613 F.3d at 1166 (quoting Burlington Northern, 548 U.S. at 68).

### c.   The Alleged Exclusion From A Holiday Party

Plaintiff has also alleged that he and other unidentified OHA employees were not invited to an OHA holiday party hosted by Mr. Anderson at a private club on December 15, 2009.  See Compl. ¶¶ 56-60.  This allegation seems to epitomize the kind of trivial workplace snubbing that does not meet the Supreme Court's definition of materially adverse action.[4]  See Burlington Northern, 548 U.S. at 68.  As the Supreme Court explained, "normally petty slights, minor annoyances, and simple lack of good manners" ordinarily will not "deter victims of discrimination from complaining to the EEOC."   Id. at 68.  Here, Plaintiff merely alleges he and certain other OHA employees were not invited to an OHA holiday party held at a private club.  See Compl. ¶¶ 56-60.   Being excluded from a social event, while potentially annoying, is not materially adverse.  Given that courts have held that some denials of training opportunities do not constitute adverse employment action in the context of retaliation claims, it is implausible to suggest that being excluded from a holiday party at a club is sufficiently adverse to support a

---

[4]  Moreover, if the other employees who allegedly were excluded from the party had not engaged in protected activity, Judge Mahoney's exclusion cannot plausibly be attributed to retaliation.

retaliation claim.  See Calhoun v. Bush, 2010 WL 605059, *1 (affirming, in part, Calhoun v. Prouty, 643 F. Supp. 2d 87 (D.D.C. 2009)).

### d.   Allegations Regarding The Docket Clerk

Plaintiff also makes several allegations related to Ms. Black, the Docket Clerk for OHA, and her relocation to an office about four blocks away from OHA.  See Compl. ¶¶ 39-45.  More specifically, Plaintiff alleges that ALJ Fernandez was directed by Mr. Anderson to cease contact with Ms. Black; that Ms. Black moved to a different office; that Plaintiff said this arrangement was impractical considering her duties; that Plaintiff suggested that "other staff employees be trained in the functions of the Docket Clerk, and that one of them be designated 'Acting Docket Clerk' for the periods of Ms. Black's absence from OHA"; that Mr. Anderson indicated he would not appoint an Acting Docket Clerk; that "[o]n or around October 16, 2009, [Plaintiff] sent an e-mail to Ms. Black . . . requesting that she provide a written list of tasks she performed as Docket Clerk, and the steps required to complete those tasks, to be used as a continuity book for Staff Assistants"; and that Mr. Anderson responded by email, criticizing the request.  See id. The relocation of another employee would not deter a reasonable employee from pursuing protected activity.  To the extent that Plaintiff's complaint is based on Mr. Anderson's rejection of Plaintiff's request that other employees should become docket clerks,  it is merely a complaint that Plaintiff was not in charge of OHA rather than Mr. Anderson.

In any event, these allegations do not amount to a materially adverse action.  While the actions may have affected ALJ Fernandez or Ms. Black, Plaintiff lacks standing to raise any claims based on harms that ALJ Fernandez or Ms. Black allegedly experienced.  Even if the relocation of Ms. Black had affected Plaintiff's work, one must again remember that "[m]ere inconveniences and alteration of job responsibilities will not rise to the level of adverse action."

Childers, 44 F. Supp. 2d at 19; see also Calhoun, 2010 WL 605059, *1.  While Plaintiff may

believe Mr. Anderson's email response was critical of Plaintiff's suggestion, criticism (even

formal criticisms or reprimands) do not constitute adverse employment actions in retaliation

cases.  See Brown v. Mills, 674 F. Supp.2d 182, 192-93 (D.D.C. 2009) (concluding verbal

reprimand was not materially adverse); Cochise v. Salazar, 601 F. Supp.2d 196, 201 (D.D.C.

2009) (finding written criticism and warning were not materially adverse actions).  Indeed, if

criticism from supervisors were materially adverse, no supervisor would be safe from suit by any

employee with prior EEO activity.

### e.   Allegations Regarding OHA Procedures And Decisions

Plaintiff also challenges administrative processes and decisions in OHA, which generally

affect all OHA employees or ALJs.  Like Plaintiff's allegations regarding the process for

assigning cases, and the other allegations discussed supra, those claims do not involve any

materially adverse action.  In paragraphs 48 to 52 of the Complaint, Plaintiff makes allegations

regarding the detail of two law clerks to OHA.[5]  In paragraphs 62 to 65, Plaintiff alleges that Mr.

Anderson responded "[o]n or around May 12, 2009," to a letter sent by a respondent in a case

Plaintiff was adjudicating.  Compl. ¶ 62.  Notably, Plaintiff does not assert that the letter from

the respondent was connected to the subject of a case on Plaintiff's docket, nor does Plaintiff

assert that Mr. Anderson knew the respondent had a case pending on Plaintiff's docket.  See

Compl. ¶¶ 62-65 (suggesting merely that it was possible that Mr. Anderson could have known of

such a case).  In paragraphs 66 to 73, Plaintiff complains of the process by which Notices of

Election in fair housing cases are transmitted to the Department of Justice—a non-substantive

---

[5] How the detail of the two clerks, or the manner of addressing any potential or hypothetical
conflict of interest with respect to the two clerks, negatively impacted Plaintiff is left a mystery.
There is no reason to think Plaintiff has standing to bring claims for actions respecting the detail
of law clerks to OHA.

complaint about administrative procedure and protocol—apparently objecting to the involvement of the Docket Clerk, Ms. Black;[6] perhaps Plaintiff would have adopted a different process had he been Director of OHA, but he was not.

In paragraphs 75 to 76 of the Complaint, Plaintiff objects that "[o]n or around September 25, 2009," Ms. Black allegedly did not comply with his request that docket numbers be assigned for more than 100 Mortgagee Review Board ("MRB") notices when Mr. Anderson instructed that they not receive docket numbers unless and until hearing requests were received.  Compl. ¶ 74.  This, again, affected HUD ALJs generally, and was not anything unique to Plaintiff.

Those allegations are the type of trivial and subjective workplace grievances that do not rise to the level of a materially adverse action.  See, e.g., Childers, 44 F. Supp. 2d at 19 ("Mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action.").  Plaintiff cannot sue HUD simply because he dislikes his supervisor or finds certain OHA procedures annoying.  See Burlington Northern, 548 U.S. at 68 ("personality conflicts" and "minor annoyances" do not create discrimination or retaliation claims).

### f.   Alleged Denial Of  Request To Telecommute

Plaintiff has alleged that he made an informal request to apply for a telework agreement, which was denied.  See Compl. ¶¶ 53-55.  Plaintiff does not claim that his inability to telecommute changed his job duties or responsibilities as an ALJ.  The denial of the request simply meant that Plaintiff  (an ALJ) had to work at the office, and could not work from home.  That would not deter a reasonable employee from engaging in protected activity, and therefore it is not a materially adverse action.

---

[6] Again, this set of allegations, like others, has to do with procedures applicable indiscriminately to HUD ALJs, not just to Plaintiff.  Moreover, the allegations have to do with the duties of Ms. Black, not of Plaintiff; Plaintiff lacks standing to challenge the preexisting duties of the Docket Clerk.

**D. Plaintiff Also Has Failed To State A Claim Of Retaliatory Hostile Work Environment.**

Count II raises claims of harassment, which appear to be brought under a hostile work environment theory. See Compl. ¶¶ 104-05. The hostile work environment standard is intended to be demanding "to ensure that Title VII does not become a general civility code," and to "filter out complaints attacking the ordinary tribulations of the workplace." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quotation marks omitted); see Smith v. Jackson, 539 F. Supp. 2d 116, 137 (D.D.C. 2008). In determining whether a hostile work environment exists, courts must "look at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Smith, 539 F. Supp. 2d at 137 (quotation marks omitted). "Even a few isolated incidents of offensive conduct do not amount to actionable harassment." Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002). "To establish hostile work environment, plaintiffs . . . must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.'" Penn. State Police v. Suders, 542 U.S. 129, 133 (2004) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)); see also Hussain v. Nicholson, 435 F. 3d 359, 366 (D.C. Cir. 2006); Stewart v. Evans, 275 F. 3d at 1129, 1133-34 (affirming dismissal of hostile work environment claim where conduct complained of was not severe or pervasive).

Plaintiff's complaint does not identify behavior that is sufficiently severe or pervasive to be recognized as a hostile work environment. Indeed, when compared to the truly severe or pervasive conduct which has been held to create a hostile work environment, the issues Plaintiff complains of seem minor, and appear to reflect Plaintiff's subjective dissatisfaction with the manner in which OHA is run.

This case is similar to Childs-Pierce v. Utility Workers Union of America, where the court dismissed the plaintiff's hostile work environment claim for failure to state a claim, as she did not assert severe or pervasive acts. 383 F. Supp. 2d 60, 79 (D.D.C. 2005). In that case, the plaintiff claimed she suffered a hostile work environment when she was suspended for five days for misusing employer letterhead and other resources; her superior ordered her, in a "hostile" manner, to provide her birth certificate to clarify discrepancies in her personnel file; and requests for sick leave were denied and she was ordered to provide medical documentation before being granted sick-leave status. Id. As in Childs-Pierce, the events that Plaintiff raises in this case "simply are not, individually or collectively, sufficiently severe or pervasive to constitute a hostile work environment claim." Id. Indeed, Plaintiff's allegations are less severe than Childs-Pierce's claims. Plaintiff has not been suspended. Nor has plaintiff been placed on leave restriction or ordered to provide documentation to support information in his personnel file.

Plaintiff's allegations also are less serious than those raised in Lester v. Natsios, in which the court found that the employee did not establish a *prima facie* case of hostile work environment. See 290 F. Supp. 2d 11, 31-33 (D.D.C. 2003). One incident in that case involved an unknown person leaving letters referring to the KKK on the desks of several African-American employees (though not the plaintiff's). Id. at 31. Nothing at all disturbing like this has occurred in the instant case. Thus, rather than stemming from an objectively hostile work environment, Plaintiff's subjective offense seems to come from not being invited to a party at a private club, finally being warned that disregard of his supervisor's direction could result in discipline, and not having his preferences followed with respect to OHA administrative practices.

To the extent that any statement or email by Mr. Anderson may be interpreted as containing disparaging remarks or criticism of Plaintiff's work, the courts have noted that

"allegations of disparaging remarks, criticisms of his work, and other negative comments do not

sufficiently demonstrate a significant level of offensiveness."  Nurridin, 674 F. Supp. 2d at  94;

see also Williams v. Dodaro, 576 F. Supp. 2d 72, 92-93 (D.D.C. 2008) (holding that writing a

reprimand and expressing disparaging remarks in front of plaintiff's coworkers did not constitute

"the type of 'severe' or 'pervasive' conditions that would give rise to an actionable hostile work

environment claim").  Similarly, Plaintiff's complaints regarding administrative processes in

OHA—such as those concerning the location of Ms. Black, the appointment of an Acting Docket

Clerk, communication protocols with DOJ, and the docketing of MRB letters prior to hearing

requests—do not appear to support a hostile work environment claim.  See Hussain v. Guitierrez,

593 F. Supp. 2d 1, 7 (D.D.C. 2008) ("[C]omplaints over undesirable job responsibilities and

office arrangements do not support a hostile work environment cause of action."), appeal

dismissed by Hussain v. Locke, 2010 WL 1632715 (D.C. Cir. 2010) (unpublished).

     In addition, the events complained of in this case are discrete, isolated incidents, not of a

hostile-work-environment nature, which cannot be used to support both a disparate treatment

theory and a hostile work environment theory of discrimination.  See Baird v. Snowbarger, --- F.

Supp. 2d ---, 2010 WL 3999000 at *12 (D.D.C. 2010).  In Childs-Pierce, the court objected to

such "attempts to cobble together a hostile work environment claim from discrete acts of alleged

discrimination against [plaintiff] that are neither severe nor widespread," explaining that

"[p]laintiff has presented no other evidence supporting an inference of racial discrimination, or a

severe, pervasive hostility in the workplace, and mere reference to alleged disparate acts of

discrimination against plaintiff cannot be transformed, without more, into a hostile work

environment claim."  383 F. Supp. 2d at 79 (citing Lester, 290 F. Supp. 2d at 33 ("Discrete acts

constituting discrimination or retaliation claims . . . are different in kind from a hostile work

environment claim that must be based on severe and pervasive discriminatory intimidation or insult.")).  Likewise, a "plaintiff cannot rely on the discrete acts upon which she bases her discrimination and retaliation claims to support her hostile work environment claim.  'Because plaintiff's allegedly "hostile" events "are the very employment actions [s]he claims are retaliatory[,] [s]he cannot so easily bootstrap allegedly retaliatory incidents into a broader hostile work environment claim."'"  2010 WL 3999000 at *12 (quoting <u>Franklin v. Potter</u>, 600 F. Supp. 2d 38, 76 (D.D.C. 2009) and <u>Keeley v. Small</u>, 391 F. Supp. 2d 30, 51 (D.D.C. 2005)).  With respect to his allegations of harassment or hostile work environment, Plaintiff merely—and insufficiently—regurgitates his allegations of discrete retaliatory acts.  Therefore he has failed to state a claim of hostile work environment.

## V.  PLAINTIFF'S ADMINISTRATIVE PROCEDURE ACT CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

### A.  Title VII And The Rehabilitation Act Provide The Exclusive Judicial Remedy For Claims Of Retaliation Covered By The Two Statutes.

The essence of Plaintiff's complaint is that he was retaliated against for participating in protected activity (completing an affidavit and being interviewed for ALJ Fernandez's Title VII and Rehabilitation Act complaint).  Plaintiff's APA claims are fundamentally linked with, and dependent on, those retaliation claims.  <u>See</u>, <u>e.g.</u>, Compl. ¶¶ 61 (with its heading), 102, 104, 106, 109 (all citing and relying on his allegations of discrimination and treating alleged interference with judicial independence as, fundamentally, retaliation).   In Count III, Plaintiff contends that the manner in which cases are assigned  to him (which he previously characterized as retaliatory), violates the APA.  <u>See</u> <u>id.</u> ¶¶ 106-07.  Count IV incorporates Plaintiff's prior allegations of retaliation and harassment, and contends that they interfere with his judicial independence in violation of the APA.  <u>See</u> <u>id.</u> ¶¶ 109-110.

Title VII and the Rehabilitation Act are the exclusive remedies for Plaintiff's claims of retaliation.  Brown v. General Servs. Admin., 425 U.S. at 835 ("[T]he established principle leads unerringly to the conclusion that § 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment."); Ethnic Employees of the Library of Congress v. Boorstin, 751 F. 2d 1405, 1414-15 (D.C. Cir. 1985) ("Allowing federal employees to recast their Title VII claims as constitutional claims would clearly threaten" the policies underpinning "'the rigorous administrative exhaustion requirements and time limitations'" of Title VII) (quoting Brown, 425 U.S. at 833); Raines, 424 F. Supp. 2d at 64 (stating that the Rehabilitation Act "provides the 'exclusive remed[y]' for employment discrimination based on a disability for federal employees") (citations omitted); Ward, 133 F. Supp. 2d at 57-58 (noting similarly that Title VII is the only remedy for claims of discrimination based on race, sex, etc., and dismissing 10 claims asserting sex discrimination under statutes other than Title VII, and further dismissing 10 age discrimination claims asserted under statutes other than the ADEA).[7]  Thus, Plaintiff's only judicial remedy (other than perhaps a prohibited personnel practice appeal through the MSPB) for the alleged retaliation arises under Title VII and the Rehabilitation Act.  Plaintiff cannot use the Administrative Procedure Act as an alternative legal theory for his retaliation claims.  Accordingly, the APA claims in Counts II through IV should be dismissed.

---

[7] In Brown, the Supreme Court further noted that permitting a general claim "to be brought under the general, civil rights statute, [42 U.S.C. § 1983], where exhaustion is not required, would undermine the 'strong policy requiring exhaustion of state remedies'" for the claim defined by the more specific, and ultimately preemptive, statute.  425 U.S. at 834.  In the same way, to permit Plaintiff to assert an APA claim based on his allegations concerning discrimination, would improperly repudiate the congressionally mandated exhaustion requirement for Title VII and Rehabilitation Act claims.

**B. To The Extent Any Portion Of The APA Claims Is Distinct From Claims Of Retaliation, The Claim Falls Within The Exclusive Remedial Scheme Of The Civil Service Reform Act, And Is Outside The Court's Jurisdiction.**

**1.  The Civil Service Reform Act Provides A Remedy For Challenges To Certain Personnel Actions**

The APA "does not provide additional  judicial remedies in situations where the Congress has provided special and adequate review procedures."  <u>Bowen v. Massachusetts</u>, 48 U.S. 879, 903 (1988).

> Further, 'the APA excludes from its waiver of sovereign immunity claims for which an adequate remedy is available elsewhere' as well as 'claims seeking relief expressly or impliedly forbidden by another statute,' <u>Fornaro v. James</u>, 416 F.3d 63, 66 (D.C. Cir. 2005), and the APA as a whole does not apply 'to the extent that [other] statutes preclude judicial review,' 5 U.S.C. § 701(a)(1).  Thus, where 'Congress has provided a plaintiff with statutory schemes and remedies through which the plaintiff may seek relief, . .. an APA claim is properly dismissed.'

<u>Kursar v. Transportation Sec. Admin.</u>, 581 F Supp.2d 7, 15 (D.D.C. 2008).

The CSRA is a remedial scheme which precludes APA review.  The CSRA gives both federal employees and applicants to federal positions the right to file an action with the Merit Systems Protection Board ("MPSB") alleging that a prohibited personnel action occurred. 5 U.S.C. §§ 2301(b)(2), 2302(a)(2)(A)(i-ii).  As a federal employee, Plaintiff is foreclosed from pursuing an APA claim in this Court because the remedial scheme provided by the CSRA is the exclusive remedy for the injuries Plaintiff complains about (to the extent they are not within the scope of Title VII or the Rehabilitation Act), and any appeal from the MSPB's decision is to the United States Court of Appeals for the Federal Circuit.  <u>Cf. Telecommc'ns. Research & Action Ctr. v. Fed. Commc'n. Comm'n</u>, 750 F.2d 70, 75, 77-78 (D.C. Cir. 1984) (holding that where a statute vests review of an agency's actions in a Court of Appeals, then in cases seeking relief that

could affect that court's future jurisdiction, judicial review rests exclusively in the Court of Appeals).

>The CSRA:
>
>comprehensively overhauled the civil service system . . . creating an elaborate 'new framework for evaluating adverse personnel actions against [federal employees].' It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." U.S. v. Fausto, 484 U.S. 439, 443 (1988) (citations omitted).  The CSRA remedial scheme is the "comprehensive system for reviewing personnel action taken against federal employees."  Id. at 455.

Kleiman v. U.S. Dep't of Energy, 742 F. Supp. 697, 698-99 (D.D.C. 1990).  "The types of personnel actions covered by the Act and the review available can be divided into three categories: (1) for major personnel actions specified in the statute ('adverse actions'), direct judicial review [before the Federal Circuit Court of Appeals] after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ('prohibited personnel practices'), review by the Office of Special Counsel ('OSC'), with judicial scrutiny [by the Federal Circuit Court of Appeals] 'limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry;' (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts."  Kleiman, 742 F. Supp. at 99, n.2 (citing Carducci v. Regan, 714 F.2d 171, 175 (D.C. Cir. 1983) (citations omitted)). The Supreme Court has described this framework as "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."  United States v. Fausto, 484 U.S. 439, 445 (1988).

**2.   The CSRA Precludes Plaintiff's APA Claims.**

Plaintiff's APA claims are clearly precluded by the CSRA.  In <u>Gray v. Office of Personnel Mgmt.</u>, four ALJs from the Department of Labor brought APA claims against the Office of Personnel Management's ("OPM") directive promoting thirty-nine other ALJs to GS-16.  771 F.2d 1404 (D.C. Cir. 1985), <u>cert.</u> <u>denied</u>, 475 U.S. 1089 (1986).  Relying on <u>Carducci</u>, the District Court dismissed the ALJs' claims for lack of subject matter jurisdiction.  <u>Id.</u> at 1505.  On appeal, the ALJs argued that <u>Carducci</u> did not apply to all APA suits brought by ALJs, because the need for decisional independence for ALJs mandated a higher level of protection than that afforded by the CSRA.  <u>Gray</u>, 771 F.2d at 1509.  The Court of Appeals rejected that argument, finding no "special status" for ALJs beyond what Congress had already expressly provided (such as the requirement imposed on the MSPB that "good cause" be determined before an agency can take an "adverse action" against an ALJ).  <u>Id.</u> at 1510.  The Court of Appeals noted that no such special provision for ALJs was made by Congress with respect to review of "prohibited personnel practices," and affirmed the district court's dismissal of the ALJ's claims for lack of subject matter jurisdiction.  <u>Id.</u> at 1511.  Like other employees, the ALJs' purported APA claims were governed by the remedial scheme created by the Civil Service Reform Act such that ALJs must look to the MSPB or OSC to address their concerns about alleged prohibited personnel practices, even those allegedly constituting infringement of "judicial independence."  <u>Id.</u> at 1507-08, 1510-11.

As in <u>Gray</u>, Plaintiff's attempt to challenge what he seems to think are prohibited personnel practices under 5 U.S.C. § 2302(b) based on interference with judicial independence under the APA, without resort to the MSPB or the OSC, is preempted by the CSRA with its "exhaustive remedial scheme" requiring that employees "process their claims through the Office

of Special Counsel ('OSC') and, if appropriate, the Merit Systems Protection Board ('MSPB'),
before repairing to federal court."  Id. at 1507-08 (citing and quoting Carducci, 714 F. 2d 171).
Plaintiff has failed to avail himself of such remedies through the OSC or MSPB and cannot slip
his claims into federal district court under the APA.

Thus, the courts in this and other jurisdictions have held that ALJs cannot escape the
CSRA's remedial scheme by bringing claims in district court based on the APA or other
authorities to challenge actions related in some way to their employment.  See, e.g., Schwartz v.
Int'l Fed'n. of Prof'l and Technical Eng'rs, AFL-CIO, 306 Fed. Appx. 168, 173, 2009 WL
62236, **3 (5th Cir. Jan. 12, 2009) (holding that courts "broadly construe the definition of
'personnel action,' and finding that plaintiff ALJ's APA claims complaining of false accusations
against him, derogatory emails circulated about him, deprivation of his seniority status and
relegation to inferior office space were preempted by the CSRA); Haworth v. Office of
Personnel Mgmt., 112 Fed. Appx. 406, 408, 2004 WL 2203579, **2 (6th Cir. Sept. 16, 2004)
(concluding that retired ALJ's constitutional challenge to OPM's determination that he was not
entitled to pay and benefits while employed as an "intermittent employee" was precluded by the
CSRA, "which provides the sole avenue of redress for personnel actions affecting federal
employees."); Torres v. Soc. Sec. Admin., 2001 WL 1602160, *2 (E.D. La. Dec. 13, 2001)
(concluding that court did not have subject matter jurisdiction under the APA to consider ALJ's
challenge regarding repeated requests for reassignment or transfer to another hearing office);
Moncrief v. Office of Personnel Mgmt., 621 F. Supp. 963, 964, 966 (D.D.C. 1985) (rejecting
plaintiff's APA challenge to OPM's disposition of his application for an ALJ position based on
lack of subject matter jurisdiction because claims fell within the scope of CSRA).

Moreover, the cases in which the courts have considered an ALJ's APA claims are easily distinguishable from this case and/or have already been rejected by the Court of Appeals in this Circuit.   In Dugan v. Ramsey, the First Circuit held that OPM's practice of counting as relevant experience trial preparation work related to cases that are actually tried, but refusing to count as relevant likely identical experience related to cases that settle" violated the APA.   Dugan v. Ramsey, 727 F.2d 192, 193-94, 198 (1st Cir. 1984).   The D.C. Circuit, in contrast, does not review such claims under the APA.   In Gray, the D.C. this Circuit explicitly rejected Dugan because it was "clearly contrary" to the binding precedent of Carducci.   See Gray, 771 F.2d at 1510; see also Moncrief, 621 F. Supp. at 966 (recognizing Court of Appeals for District of Columbia Circuit has "dismissed precedential significance" of Dugan).

Nor can Plaintiff argue that his APA claims are not preempted by the CSRA on the grounds that the actions about which he complains—assignment of cases, administrative practices, alleged interference with judicial independence—are not "personnel actions" or "prohibited personnel practices" within the meaning of the statute, because the D.C. Circuit has already rejected that argument in Carducci.

> We think, to the contrary, that failure to include some types of nonmajor personnel action within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available—that the matter be deemed 'committed to agency discretion by law,' see 5 U.S.C. § 701(a)(2) (1976).  Otherwise, one confronts an even more aggravated form of the problem that caused us to eliminate prohibited personnel practices from direct judicial review.

Carducci, 714 F.2d at 174-75; see also Sculimbrene v. Reno, 158 F. Supp. 2d 1, 5, 6 (D.D.C. 2001) ("[A]ccording to applicable and binding precedent, whether or not the complained of harm falls within the definition of 'personnel action' in Section 2302 is not relevant to a determination of whether the CSRA governs Plaintiff's claims.") (citing Bush v. Lucas, 462 U.S. 367, 385 (1983)).

Accordingly, any and all of Plaintiff's APA claims, including his claim challenging the manner in which ALJs in the OHA are assigned cases, as well as his complaints that Mr. Anderson interfered with his judicial independence by corresponding with a party in a pending case, giving instruction about the docketing of cases, and setting protocol for communication with DOJ, are preempted by Title VII, the Rehabilitation Act, and/or the CSRA, and must be dismissed for lack of subject matter jurisdiction.[8]

### 3. Plaintiff Cannot Sneak His APA Claims Into Federal Court By Asserting They Are Part Of A "Mixed Case Complaint."

A mixed case complaint "is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB). . . ."  29 C.F.R. § 1614.302(a)(1); see also Greenhouse v. Geren, 574 F. Supp. 2d 57, 67 (D.D.C. 2008) ("A mixed case is an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination.") (quoting Butler v. West, 164 F. 3d 634, 638 (D.C. Cir. 1999)).  When a mixed case complaint or a mixed case appeal is filed, "[b]y statute, the relevant agency EEO office and the MSPB can and must address both the discrimination claim and the appealable personnel action."  Butler, 164 F.

---

[8]  As noted previously, Plaintiff's APA claims are based on theory that Mr. Anderson's actions with respect to case assignments, docketing, etc., were based on a retaliatory motive.  See, e.g., Compl. ¶ 61 (with the heading preceding ¶ 61—"Retaliatory and Harassing Conduct—Interference with Judicial Independence"); Compl. ¶ 79 (complaining that despite Plaintiff's complaints, no action was taken to stop Mr. Anderson's "interference with Judge Mahoney's judicial independence, or to abate the hostile work environment thereby created").  The only appropriate remedy for these claims is Title VII or the Rehabilitation Act.  See, e.g., Haynes v. HHS, 879 F. Supp. 127, 129 (D.D.C. 1995) ("Thus, plaintiff's only viable claims are encompassed within the scope of Title VII, the exclusive judicial remedy for federal employees alleging employment discrimination.") (citations omitted); Dearsman v. Kurtz, 516 F. Supp. 1255, 1259-60 (D.D.C. 1981) (dismissing plaintiff's APA and constitutional claims on the grounds that Title VII and the CSRA were exclusive remedy for claims arising out of federal employment).

at 638 (citing 5 U.S.C. § 7702(a)); <u>see</u> <u>also</u> 29 C.F.R. § 1614.110 ("The final decision shall

consist of findings by the agency on the merits of each issue in the complaint . . .").  Further,

assuming an employee has asserted a mixed case complaint, and a final decision has been issued

by the agency, the employee may appeal to the MSPB or file a civil action.  <u>See</u> 29 C.F.R. §

1614.302(d).  However, the fact that a mixed case complaint can find its way into district court

does not help Plaintiff because there is no mixed case complaint here, and because Plaintiff never

asserted the presence of a mixed case complaint before the agency.

For a mixed case complaint to exist there must be "an action that can be appealed to the

Merit Systems Protection Board (MSPB). . . ."  29 C.F.R. § 1614.302(a)(1).  Further, as Judge

Sullivan has explained, "the Federal Circuit [has] expressly held that the MSPB has appellate

jurisdiction over only the five adverse actions enumerated in 5 U.S.C. § 7512, and without 'an

appealable adverse agency action, the case is not a mixed case.'"  <u>Greenhouse</u>, 574 F. Supp. 2d

at 67 (citing and quoting <u>Cruz v. Dep't of the Navy</u>, 934 F. 2d 1240, 1243, 1246 (Fed. Cir.

1991)).  Under 5 U.S.C. § 7512 (as well as 5 U.S.C. § 7521(b)), only the following actions create

MSPB appellate jurisdiction:  removal, suspension, reduction in grade, reduction in pay, and a

furlough of 30 days or less.  No such action has occurred in the instant case, nor has Plaintiff so

alleged.  Clearly, Plaintiff's case is not a mixed case complaint because it does not involve an

adverse action over which the MSPB has jurisdiction.  It would be impossible for Plaintiff to

now introduce a new claim in an attempt to establish that there could have been MSPB

jurisdiction giving rise to a mixed case complaint.  <u>Id.</u> at 68.

**C.    The Court Lacks Jurisdiction To Review Count V Because Deciding
Whether To Intervene In Another Agency's ALJ Program Is Committed To
OPM's Discretion And OPM's Decision Not To Intervene Is Not A
Reviewable Final Agency Action.**

Count V alleges that OPM violated the APA by failing to intervene in Plaintiff's dispute with HUD officials, and characterizes that as a failure to carry out OPM's alleged duty to ensure ALJ independence.  <u>See</u> Compl. ¶¶ 111-112.   That claim should be dismissed for three reasons. First, as discussed <u>supra</u>, ALJs cannot use an 'interference with judicial independence' theory to challenge personnel actions under the APA; the CSRA is the exclusive remedy for claims that are outside the scope of the federal anti-discrimination statutes, and the Rehabilitation Act and Title VII provide the exclusive remedy insofar as Plaintiff attributes the personnel decisions to reprisal.   Second, OPM's alleged failure to exercise its oversight authority over HUD's ALJ programs  is not a reviewable final agency action, and the Court cannot compel OPM to exercise that oversight because that decision is committed to OPM's discretion.   Finally, as discussed <u>infra</u> in Part VI, ALJs lack standing to challenge their alleged loss of judicial independence, because the parties who appear before ALJs are the only people with a cognizable interest in that independence.

### 1.  OPM  Has Discretionary Authority To Oversee Aspects Of the ALJ Program.

OPM is responsible for setting the appropriate qualifications for ALJs.  OPM fulfills its responsibility by developing and administering the ALJ Examination and by preparing certificates of eligibles for requesting agencies.  5 U.S.C. §§ 1104(a)(2) and 3301; <u>see</u> <u>also</u> 5 CFR § 930.201(e).  OPM is prohibited by statute from delegating this responsibility to another agency.  5 U.S.C. § 1104(a)(2).   OPM does not hire ALJs; agencies make their own selections from a group of individuals that OPM has certified to be eligible.  <u>See</u> 5 CFR § 930.201(f) (2007

By regulation (5 CFR Part 930, Subpart B), OPM has the discretionary authority to oversee certain aspects of the government-wide administrative law judge program, including the authority to ensure the independence of administrative law judges.  5 CFR § 930.201(e)(11).

This authority is based on agency-wide authority granted to OPM's Director.  Specifically, 5 U.S.C. § 1103(a)(5) states that the Director or personnel designated by him are responsible for "executing, administering, and enforcing . . . the civil service rules and regulations of the President and the Office and the laws governing the civil service."  The "civil service rules . . . of the President" include civil service rule V, section 5.2(b)(2), charging the Director with "[e]valuating the effectiveness of . . . agency compliance with and enforcement of applicable laws, rules, regulations, and Office directives," which includes 5 C.F.R. 930.201(e)(11).  In addition, the "laws governing the civil service" include 5 U.S.C. 1305, which states that "for the purpose of sections  . . . of this title that relate to administrative law judges, the Office of Personnel management may . . . investigate [and] . . . subpoena witnesses and records."

OPM's discretionary oversight authority is tempered, however, by the fact that it is not involved in the day-to-day management of ALJs within their hiring agencies.  Specifically, under 5 U.S.C. 556(c), the actions of employees who preside at hearings, including ALJS, are "[s]ubject to published rules of the agency and within [the agency's] powers."

## 2. OPM Has Not Taken Any Final Agency Action And The APA Does Not Give The Court Jurisdiction To Compel OPM To Act.

OPM's alleged failure to intervene in Plaintiff's dispute with HUD officials is not a final agency action, and therefore cannot be reviewed under the APA.  Further, the discretionary nature of OPM's oversight authority precludes APA review of that decision.  Consequently, the Court lacks jurisdiction to review the APA claims against OPM.

The APA operates in tandem with federal question jurisdiction under 28 U.S.C. § 1331 to permit courts to review challenges to certain agency actions.  See Califano v. Sanders, 430 U.S. 99, 107 (1977); Galluci v. Chao, 374 F. Supp. 2d 121, 128 (D.D.C. 2005).  Section 704 of the APA  permits courts to review "final agency action," and to review related "preliminary,

procedural, or intermediate agency action" at the time the final action is reviewed.  5 U.S.C. §

704; <u>see</u> <u>Lujan v. Defenders of Nat'l Wildlife Fed.</u>, 497 U.S. 871, 882 (1990) ("When, as here,

review is sought not pursuant to specific authorization in the substantive statute, but only under

the general review provisions of the APA, the "agency action" in question must be "final agency

action."); <u>see</u> <u>also</u> <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 61-62 (2004) (citing 5

U.S.C. § 704; requiring that where no other statute provides a private right of action, the "agency

action" complained of must be "final" agency action).  To be "final" for purposes of Section 704,

an agency action "must mark the consummation of the agency's decisionmaking process — it

must not be of a merely tentative or interlocutory nature."  <u>Bennett v. Spear</u>, 520 U.S. 154, 177-

78 (1997).

  Plaintiff has not identified any final action by OPM that is contrary to the APA.  "A final

agency action '(1) marks the consummation of the agency's decision making process—it must

not be of a merely tentative or interlocutory nature; and (2) the action must be one by which

rights or obligations have been determined or from which legal consequences will flow.'" <u>Assoc.</u>

<u>of Admin. Law Judges v. Office of Personnel Mgmt.</u>, 640 F. Supp. 2d 66, 72 (D.D.C. 2009)

(citing <u>Domestic Sec., Inv. v. SEC</u>, 333 F.3d 239, 246 (D.C. Cir. 2003)).  In fact, his complaint is

premised on OPM's purported failure to act.  It follows that there is no jurisdiction under Section

704.

  An agency's alleged failure to act is "sometimes remediable under the APA, but not

always."  <u>Norton v. So. Utah Wilderness Alliance</u>, 542 U.S. 51, 55 (2004).  Section 706(1)

permits claims for 'unreasonable delay' to "proceed only where a plaintiff asserts that an agency

failed to take a discrete agency action that it is required to take.  <u>Id.</u> at 64; <u>see also</u> <u>Orlov v.</u>

Howard, 523 F. Supp. 2d 30, 37 (D.D.C. 2007) (same).  If the agency has no such duty, there is no APA jurisdiction.  See Orlov, 523 F. Supp. 2d at 37.

The limits on APA jurisdiction recognized in Norton dispose of the APA claims premised on OPM's alleged failure to act.  There, the Court addressed, inter alia, the language in 5 U.S.C. §706(1), which provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed."  524 U.S. at 62.  The Court noted, with emphasis, that "the only agency action that can be compelled under the APA is action legally required."  524 U.S. at 63 (emphasis in original).   Thus, in order to prevail on an APA claim of "agency inaction" OPM, Plaintiff must establish that OPM "failed to take a *discrete* agency action that it is *required to take*."  Id.  Plaintiff cannot make that showing.  As noted above, OPM's oversight authority is discretionary.  Plaintiff does not identify any "discrete agency action" OPM was required to take regarding his dispute with HUD officials, because there is no such required action.

Generally, OPM exercises its oversight authority by conducting periodic, scheduled audits of Federal agencies, to address compliance with Civil Service laws, rules and regulations, adherence to merit system principles, and the proper of delegated personnel functions.  See 5 U.S.C. §§ 1104(b)(2), 1303(1); Civil Service Rule V, 5 CFR § 5.2(b); and Civil Service Rule X, 5 CFR § 10.3.  While these audits may result in disclosure of matters pertaining to Administrative Law Judges, their focus is on the subject agency's compliance with Civil Service laws, rules, and regulations generally --- not on a specific judge's grievances.  OPM also exercises discretionary oversight over matters affecting Administrative Law Judges on a transactional basis by approving and disapproving personnel actions affecting Administrative

Law Judges.  See 5 C.F.R. §§ 930.201(e)(2), (4)-(8).  Therefore, Plaintiff's failure to act claim should be dismissed.

## VI.     PLAINTIFF ALSO LACKS STANDING TO BRING THE APA CLAIMS PREMISED ON THE PURPORTED LOSS OF JUDICIAL INDEPENDENCE.

Even if Plaintiff could successfully circumvent the CSRA—which he cannot—he does not have standing to challenge the actions allegedly taken by Mr. Anderson and HUD, and the actions allegedly not taken by OPM, which he claims interfered with the ALJs' judicial independence.  To establish Article III standing, a plaintiff must show that: "(1) he has suffered an 'injury in fact' that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action by the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  See Foretich v. United States, 351 F.3d 1198, 1210 (D.C. Cir. 2003) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000), and Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Plaintiff bears the burden to establish Article III standing.  See Lujan, 504 U.S. at 561.  Here, Plaintiff cannot sustain his burden to establish an injury in fact.

In Goodman v. Svahn, 614 F. Supp. 726, 727-28 (D.D.C. 1985), the plaintiff, an ALJ in the Social Security Administration's OHA, alleged that certain management policies and programs, including a case production quota system, violated plaintiff's rights to decisional independence under the APA and the Fifth Amendment.  The agency moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Judge Hogan dismissed the plaintiff's claims, concluding that (i) an ALJ's individual rights with respect to his position are created by Congress and not constitutionally protected; (ii) an ALJ's rights are therefore limited to the protections of his compensation and tenure provided in the APA; and (iii) any larger right to judicial independence

"would belong to the claimants whose rights are adjudicated by the ALJs, rather than to the ALJs themselves, and therefore would not create a right to relief in this plaintiff." Goodman, 614 F. Supp. at 728 (citations omitted); see also D'Amico v. Schweiker, 698 F.2d 903 (7th Cir. 1983) (dismissing ALJs' suit challenging agency's new "policy" for establishing month of cessation for purposes of termination of benefits—a determination previously made by the ALJs as a matter of law—on the grounds that the policy interfered with the ALJs' independence or decision-making authority, based on conclusion that ALJs lacked standing to challenge the policy and the proper litigants would be the beneficiaries); Assoc. of Admin. Law Judges v. Office of Personnel Mgmt., 640 F. Supp. 2d 66, 71 (D.D.C. 2009) (dismissing plaintiffs' APA challenge to OPM's qualification standards for ALJs, holding that those plaintiffs' claims that the new standards would injure the public were the "type of generalized grievance asserting speculative harm [that] is insufficient to demonstrate standing.") (citations omitted).

Plaintiff cannot demonstrate Article III standing to support his APA claims, because the rules regarding random assignment of cases and judicial independence are intended for the benefit of the parties whose cases are adjudicated by the ALJs in OHA—not for the benefit of the ALJs themselves.  See, e.g., Wright v. McPhie, 2005 WL 3273556, *2 (D.D.C. 2005) ("In other words, 'the grant of a procedural right alone cannot serve as the basis for Article III standing unless the procedures in question are designed to protect some threatened concrete interest of [petitioner's] that is the ultimate basis of his standing.") (citing Gettman v. DEA, 290 F.3d 430 (D.C. Cir. 2002)).  As Judge Leon recently concluded, allegations like those that Plaintiff raises "do not implicate an issue broad enough to affect plaintiff's actual decisionmaking," and therefore the injury "does not lie with the ALJ, but, as this Court made clear in Goodman, with the parties appearing before the ALJ."   Fernandez v. Donovan, No. 10-

185, Mem. Op. at (D.D.C. Jan. 12, 2011) (attached as Exh. 1).  Therefore, Plaintiff's APA claims

should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the case be DISMISSED.


Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Chief, Civil Division

By:  _____/s/_____
ROBIN M. MERIWEATHER DC BAR #490114
Assistant United States Attorney
555 Fourth St. NW
Washington, DC 20530
Phone:  (202) 514-7198  Fax:  (202) 514-8780
Robin.Meriweather2@usdoj.gov

Of Counsel:

Jonathan English
Attorney-Advisor
U.S. Department of Housing and Urban Development
Office of General Counsel, Personnel Law Division
451 7th Street, SW
Washington, DC 20410
Phone:  (202) 402-3213
Fax:  (202) 401-7400


Julie L. Ferguson Queen
Office of General Counsel
U.S. Office of Personnel Management
1900 E Street, N.W.
Washington, DC 20415

## CERTIFICATE OF SERVICE


I hereby certify that I caused a true and correct copy of the foregoing to be served upon

plaintiff, Judge Jeremiah Mahoney, by electronic mail, pursuant to a written agreement to accept

electronic service.

/s/ Robin M. Meriweather
ROBIN M. MERIWEATHER
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| J. JEREMIAH MAHONEY,<br>Administrative Law Judge | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHAUN DONOVAN, Secretary<br>U.S. Department of Housing<br>and Urban Development,<br> (in his official capacity); | ) | |
| | ) | Case No. 1:10-cv-01703 (HHK) |
| DAVID T. ANDERSON,<br>Director, Office of Hearings and Appeals,<br>U.S. Department of Housing<br>and Urban Development,<br> (in his official capacity); | ) | |
| | ) | |
| JOHN BERRY, Director<br>Office of Personnel Management,<br> (in his official capacity) | ) | |
| | ) | |
| Defendants | ) | |

_____ )

## [PROPOSED] ORDER

Upon consideration of the Defendant's Motion to Dismiss, any oppositions thereto and

replies in support thereof, and the entire record herein, it is this _____ day of

_____, 2011, hereby:

ORDERED that Defendant's motion is GRANTED; and it is further

ORDERED that all claims against each Defendant are DISMISSED.

SO ORDERED.

_____
United States District Judge